WARNER, J.
Appellant challenges an order granting class certification to a group of condominium associations. It contends that the trial court abused its discretion in certifying a class, because the appellee failed to prove that its claims were typical of the class as a whole or that appellee was an adequate class representative. We conclude that the trial court did not abuse its discretion in ruling that appellee’s claims are typical of the class as a whole. We do, however, conclude that the court erroneously found that the parties had agreed to the adequacy of class counsel and reverse and remand for further proceedings on this issue.
Appellee, Ventnor B, is a condominium association within the Century Village East community. It filed a class action lawsuit against Adelphia Cable Company and related entities, as well as against *1076 appellant, CVE Master Management Company, Ine. (“CVEMMC”), the overall management association of all Century Village East Condominium Associations. The lawsuit arose from the installation of cable in two-story garden style condominium buildings in Century Village East. During the installation, large holes were cut in the firewalls in the attics of various buildings and not repaired after installation. In 2005, a fee occurred in Ventnor B, causing significant damage to the building and several condominium units. The holes in Ventnor B’s firewalls were discovered after the fee, and Ventnor B claimed that the holes made the fee spread faster, exacerbating the damage to the building and the owners.
In its complaint, Ventnor B sought to represent 192 condominium associations, all of which it alleged had suffered firewall breaches during the cable installation. It alleged that cable installers, acting under an installation contract CVEMMC signed with Adelphia, failed to perform their task in accordance with industry standards by leaving large holes in the firewalls. It asserted the cable company should have resealed these holes so as to restore the walls’ resistivity to fire. Without such repair, Ventnor B alleged, the holes would allow a fire to spread faster, causing greater danger to residents and lessening time that firefighters have to contain a fire. As a result, Ventnor B alleged that it suffered damages in a fee, and nine unit owners suffered damage to their units, including damage to surrounding common areas, loss of personal property, and loss of use. The damages incurred were exacerbated by firewalls breached by defendants.
To support its claim for class representation, Ventnor B alleged that without class representation the various condominium associations would risk inconsistent verdicts. It also claimed that the cost to repair the holes correctly was a common issue of fact. It alleged that all claims of the class were similar, because they dealt with the failure to repair the firewalls in the buildings. Any recovery, it alleged, could be put into a trust for the benefit of all of the associations and used to repair the firewalls. While the complaint mentioned the losses of the individual unit owners in Ventnor B, it did not allege that it was suing on their behalf. In claiming that any recovery could be put in a trust for the associations, it also did not mention any other type of recovery for any individual.[1]
As to CVEMMC, Ventnor B alleged causes of action for breach of contract, negligence, fraud, and breach of fiduciary duty. Ventnor B claimed that CVEMMC failed to properly supervise the installation and correct the deficiencies, as well as made statements that the installation was done in a workmanlike manner. In each cause of action, Ventnor B alleged damages for the breached firewalls and for the danger which continues as a result of the holes. In the “Wherefore” clause of the complaint, Ventnor B requested damages, including incidental and consequential damages caused by the breached firewalls such as loss of use, relocation expenses, and alternative housing expenses.
*1077 The parties apparently litigated for several years without any determination regarding class certification. The cable companies agreed to settle their part of the case. In an agreed motion for settlement between the cable companies and the various affected condominium associations, the parties agreed to a class settlement and moved the court to certify a class for the purposes of the settlement. CVEMMC was not a party to the settlement and did not join in the class certification request.
After the settlement was complete, the case continued against CVEMMC. The court set the case for trial, but shortly before the trial, Ventnor B moved to certify the class, to which CVEMMC objected. The court held a hearing at which a representative from Ventnor B testified. Based upon the evidence presented, the court entered an order certifying a class, described as:
All GARDEN STYLE or the 192 GARDEN STYLE association buildings at Century Village East in Deerfield Beach, Florida, who suffered breached to its [sic] draft barriers or draft stops during the cable installation, which was to be carried [out] by the CABLE DEFENDANTS and overseen by CVE MASTER visa-vie [sic] the contract entered on May 4, 2004, between the parties providing for the installation and the date of the resulting fire July 7, 2005.
It found that the class satisfied all four criteria for class action status: 1) 192 associations as members of the class satisfied the numerosity requirement; 2) the holes in the firewall in the condominium units created a common issue of fact for all members of the class; 3) the claims of Ventnor B that its firewall was breached were typical of the class, even though its damages may have been different, because it suffered a fire; and 4) Ventnor B was an adequate representative because its representatives had already been engaged in the litigation. The court rejected the claim that its interests were antagonistic to the other members of the class, finding no proof was offered of that. The court found that CVEMMC did not contest the adequacy of counsel. It also found that prosecution of separate lawsuits by each class member could result in inconsistent results. From this order, CVEMMC appeals.
An order certifying a class is reviewed for an abuse of discretion. Sosa v. Safeway Premium Fin. Co., 73 So.3d 91, 102-03 (Fla.2011); see also Chase Manhattan Mortg. Corp. v. Porcher, 898 So.2d 153, 156 (Fla. 4th DCA 2005) (“The question of whether to grant or deny certification is committed to the broad discretion of the circuit court.”). An appellate court “examines a trial court’s factual findings for competent, substantial evidence, and reviews conclusions of law de novo.” Sosa, 73 So.3d at 105.
To certify a class, the trial court must find that the class representative and proposed class meet the requirements of Florida Rule of Civil Procedure 1.220. The rule’s four requirements are referred to as numerosity, commonality, typicality, and adequacy. Sosa, 73 So.3d at 106. The rule requires:
(1) the members of the class are so numerous that separate joinder of each member is impracticable [numerosity ], (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class [commonality ], (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class [typicality], and (4) the representative party can fairly and adequately protect *1078 and represent the interests of each member of the class [adequacy ].
Id. (quoting Fla. R. Civ. P. 1.220(a)) (emphasis in original).
In this appeal, CVEMMC challenges the trial court’s findings and conclusions on the typicality of Ventnor B’s claims as well as the adequacy of Ventnor B as a representative of the class. As to typicality, CVEMMC relies on the fact that Ventnor B was the only condominium to suffer fire damage, which CVEMCC argues resulted in substantial differences between its claims and the claims of other members of the class. In addition, some of the condominium buildings did not have firewalls and were not damaged by the installation of the cable. Therefore, CVEMCC argues, some of the condominium associations should not be members of the class.
Typicality means “the claim or defense of the representative party is typical of the claim or defense of each member of the class.” Fla. R. Civ. P. 1.220(a). This “requirement focuses on the relationship of the class representative’s claims to the claims of the class members.” Wyeth, Inc. v. Gottlieb, 930 So.2d 635, 642 (Fla. 3d DCA 2006). “The key inquiry ... is whether the class representative possesses the same legal interest and has endured the same legal injury as the class members.” Rosa, 73 So.3d at 114. “[T]he primary concern in considering the typicality and commonality of claims should be whether the representative’s claim arises from the same course of conduct that gave rise to the other claims and whether the claims are based on the same legal theory.” McFadden v. Staley, 687 So.2d 357, 359 (Fla. 4th DCA 1997). “[T]he fact that the class representative’s damages might vary in amount from those of other class members does not necessarily defeat typicality.” Baptist Hosp., Inc. v. Baker, 84 So.3d 1200, 1205 (Fla. 1st DCA 2012); see also Sosa, 73 So.3d at 115 (factual differences “as to the extent of [the class representative’s] injury and damage recovery ... does not preclude a finding of typicality”); Morgan v. Coats, 33 So.3d 59, 65 (Fla. 2d DCA 2010) (finding typicality was satisfied where class representative “had suffered the same type of injury” even though “the extent of his injury (i.e., damages) might vary from that of the other class members”).
The trial court found that the breach of the firewall by the cable installation was common to all condominiums, and Ventnor B’s claim was similar. Ventnor B alleged in its complaint that the hole in the firewall increased the risk and danger of fire to the condominium buildings. Although CVEMMC claims that the proof of Vent-nor B’s claim will be decidedly more complex, because Ventnor B needs to show that the holes in the firewalls exacerbated the damages from the fire, the complaint alleges increased risk of fire damage as part of its claim of damage to all the buildings. CVEMMC has not shown that proof of the exacerbation of the damage in Ventnor B’s fire would be markedly different than showing the increased risk of fire damage for the other buildings with holes in the firewalls.
As to CVEMMC’s argument that Vent-nor B’s claim is not typical because many of the associations did not have holes in their firewall or were able to repair them with minor expense, the court certified as the class all buildings which suffered a breach of their firewall as a result of the installation of the cable. Therefore, those associations who do not have breaches of a firewall are not members of the class. At some point the members of the class will have to be identified specifically, but this does not defeat typicality of the claim.
*1079 Ventnor B’s damages are obviously different and more extensive than those of the other class members, because it actually suffered fire damage. A difference in the extent of damages, however, does not preclude a finding of typicality. See Sosa, 73 So.3d at 115; Baptist Hosp., Inc., 84 So.3d at 1205; Morgan, 33 So.3d at 65; see also Smith v. Glen Cove Apartments Condos. Master Ass’n, 847 So.2d 1107, 1111 (Fla. 4th DCA 2003), approved by Sosa, 73 So.3d at 98 (appellants’ claims met typicality because “they all claim that appellee was negligent and violated the [condominium] statute causing damages to them,” regardless of the fact that each class plaintiff may have different extent of damage). We thus find no abuse of discretion in the trial court’s findings with respect to typicality.
CVEMCC also claims that Ventnor B is not an adequate class representative. To obtain class certification, the class representative must show it “can fairly and adequately protect and represent the interests of each member of the class.” Fla. R. Civ. P. 1.220(a)(4). The adequacy “inquiry serves to uncover conflicts of interest between the presumptive class representative and the class he or she seeks to represent.” Sosa, 73 So.3d at 115. The inquiry is two-pronged: “The first prong concerns the qualifications, experience, and ability of class counsel to conduct the litigation. The second prong pertains to whether the class representative’s interests are antagonistic to the interests of the class members.” Id. (internal citations omitted). As to the first prong, the trial court found that the parties did not dispute the adequacy of counsel to conduct the litigation. As to the second prong, the trial court found that CVEMMC did not show an antagonistic interest of Ventnor B.
Contrary to the statement of the trial court, CVEMMC did not concede the adequacy of counsel to class litigation, and no evidence was offered as to counsel’s adequacy. In Miami Automotive Retail, Inc. v. Baldwin, 97 So.3d 846 (Fla. 3d DCA 2012), the Third District found that the class representative had not sufficiently proved this element, finding she had
fail[ed] to offer any evidence on her ability, or the ability of appointed class counsel, to assume the costs to litigate the case on behalf of the class....
Although ... current class counsel has experience handling class action cases, and he has worked with [the former, disqualified class counsel] in other litigation, he was not materially involved in the early stages of this litigation and did not offer any evidence as to his willingness and ability to absorb the costs in prosecuting this case as a class action. Because neither [the class representative] nor class counsel has offered any evidence on this issue, we conclude that adequacy has not been established, and thus the trial court abused its discretion in certifying the class.
Id. at 854; cf. Marco Island Civic Ass’n, v. Mazzini, 805 So.2d 928, 930-31 (Fla. 2d DCA 2001) (finding adequacy was not satisfied for a defendant class where the class representative was pro se and there was “simply no evidence in the record to support the court’s order, other than [plaintiffs] counsel’s unsworn argument”).
Ventnor B introduced no evidence of class counsel’s prior class action litigation experience or financial means to absorb the costs of such litigation. The fact that class counsel had successfully reached a settlement in this case, by itself, is insufficient to establish adequacy where the litigation appears not to have been conducted as class litigation until settlement.
*1080 We do not suggest that class counsel is in adequate in this case. There is simply no proof of adequacy nor any stipulation of this element. We thus reverse and remand for the trial court to conduct the necessary inquiry on this issue.
As to the second prong of the inquiry, the court found that Ventnor B representatives were fully engaged in the litigation and were capable of continuing to meet the obligations as class representative. The court found no evidence of antagonistic interests. The Ventnor B- representative admitted that Ventnor B was pursuing two other suits involving the same issues, but the evidence does not show how these other suits involved interests antagonistic to this class claim. On appeal, CVEMMC also argues that a substantial judgment for Ventnor B may be contrary to the interests of the other associations and unit owners. These arguments were not made to the trial court, and no evidence on these issues was presented. Therefore, they are not preserved.
Except with respect to the trial court’s finding of adequacy of class counsel, the trial court’s findings with respect to adequacy were supported by competent substantial evidence.
For the foregoing reasons, we reverse the order certifying a class with instructions to hold an additional hearing on the adequacy of counsel to conduct class litigation. In all other respects, the trial court did not abuse its discretion in concluding that the criteria for class action status and class representation were met.

Reversed and remanded for farther proceedings in accordance with this opinion.

MAY and LEVINE, JJ., concur.

. We note this because, in the order certifying a class, the court stated that Ventnor B was suing on behalf of the unit owners. Nowhere in the complaint is it alleged that the plaintiff is suing on behalf of any owners, although the plaintiff requests loss of use and alternative housing as elements of damage. At other places in the complaint it appears as though the only damages sought are for the repair of the holes. It is not clear to us what damages are actually being sought or whether the plaintiff can sue for the individual damages suffered by unit owners. This issue, however, has not been raised on appeal, and we need not decide it.